# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Paula Anderson, Individually and as
Executrix of the Estate of John M.
Anderson, deceased
07606 State Route 20
Montpelier, OH 43543

and

Johanna Marihugh
307 E. Madison Street
Montpelier, OH 43543

and

Brent Anderson
520 Hudson Street
Milford, OH 45105

    Plaintiffs

v.

Thomas Szymczak
c/o Edon Police Department
108 E. Indiana Street
Edon, OH 43518

and

Case No.

JUDGE

**COMPLAINT**

Robert W. Bryce (0006527)
BRYCE, LTD.
715 S. Coy Road
Oregon, OH 43616
Telephone: 419-691-2435
Facsimile: 419-691-1209
Email: bryce@sbattylaw.com

Anthony L. Gretick (0006442)
GRETICK, HARVEY & THOMPSON, LTD
121 West Butler Street
Bryan, OH 43506
Telephone: 419-636-7000
Facsimile: 419-636-7003
Email: tgretick@msn.com

Ryan S. Thompson (0077481)
GRETICK, HARVEY & THOMPSON, LTD
121 West Butler Street
Bryan, OH 43506
Telephone: 419-636-7000
Facsimile: 419-636-7003
Email: ghtlaw74.com@gmail.com

Counsel for Plaintiffs

1

Village of Edon
108 E. Indiana Street
Edon, OH 43518

Defendants

I. **PRELIMINARY STATEMENT**

1. This civil rights and wrongful death action, challenges the fatal shooting of John Anderson (Anderson) by Thomas Szymczak (Szymczak), Chief of the Edon, Ohio, Police Department on June 16, 2016. Szymczak, acting within the course and scope of his employment with the Edon Police Department, shot Anderson in the back at Anderson's home located at 07606 S. R. 20, Montpelier, Williams County, Ohio 43543. Anderson was sitting under a tree in his front yard, holding a non-functioning assault style .22 caliber rifle, and speaking with Williams County Sheriff's Deputy Frisbee when he was shot. Deputy Frisbee was approximately 15 feet in front of Anderson when Szymczak shot Anderson in the back from 70 yards away, utilizing a Bushmaster assault weapon loaded with NATO grade ammunition.

2. The department in charge of the scene was the Williams County Sheriff's Department and the officer in charge of the scene was the Williams County Sheriff, Steven Towns. Szymczak shot Anderson in the back despite the fact there was no order to shoot, Deputy Frisbee was standing 15 feet in front of Anderson, and Anderson was not an imminent threat to do serious physical harm to himself or others. Deputy Frisbee was in complete control of the situation.

3. The shooting of Anderson was witnessed by his daughter, Johanna Marihugh. Plaintiffs bring this civil rights and state law action to secure fair compensation and to ensure proper training and procedures are enacted and followed by the Edon Police Department to prevent a reoccurrence against other members of the community.

## II. **PARTIES**

4. Plaintiff, Paula Anderson, is the Executor of the Estate of John Anderson and brings this action for the benefit of herself and John Anderson's heirs, including his grandchildren.

5. Plaintiff, Johanna Marihugh, is the daughter of John Anderson and brings this action on her own behalf.

6. Plaintiff, Brent Anderson, is the son of John Anderson and brings this action on his own behalf.

7. Defendant, Thomas Szymczak, was at all times relevant to this action the Chief of Police/Law Enforcement Officer employed by the Village of Edon, Williams County, Ohio. Defendant Szymczak is a "person" under 42 U.S. § 1983 and at all times relevant to this case acted under color of law. He is sued individually, in his official capacity as the Chief of Police for the Village of Edon, Ohio, and as an employee of the Village of Edon, Ohio.

8. Defendant, Village of Edon, Ohio, is a unit of local government organized under the laws of the State of Ohio. Defendant, Village of Edon, is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

III. **STATEMENT OF FACTS**

9. John Anderson was a 59 year old male who resided at 07606 S. R. 20, Montpelier, Ohio 43543 with his ex-wife, Paula Anderson. John had health problems which necessitated in-home medical care. On June 16, 2016, Anderson was to receive care from Community Health Professionals. Personnel from Community Health Professionals called Anderson at his home for an appointment. During the course of the call with Anderson at approximately 10:15 a.m., Anderson stated to a nurse with Community Home Professionals that he had a gun and was done with life and that he was finished. As a result of the statement by Anderson, Community Home Professionals contacted the Williams County Sheriff's Department, requesting a wellness check.

10. In response to the call from Community Health Professionals, Williams County Sheriff's Deputies McCord and Frisbee arrived at Anderson's home at approximately 10:31 a.m. As they drove in to Anderson's driveway, they noticed Anderson sitting outside in a chair near the northeast corner of his residence. Anderson had in his possession what appeared to be an assault rifle. Deputy Frisbee immediately backed out of the driveway and heard Deputy McCord, who was in a vehicle behind Deputy Frisbee, radio "gun, gun", Deputy Frisbee radioed the same. Deputy McCord also requested additional units. Deputy McCord took a position northeast of Anderson's residence and Deputy Frisbee took a position northwest of Anderson's

residence. Both officers were behind their patrol vehicles and were armed with AR-15 style assault rifles.

11. Anderson, carrying what appeared to be an assault rifle, walked from the chair in which he was seated toward a large tree at northeast corner of his property. Deputy Frisbee had his assault rifle trained on Anderson as Anderson moved, and he ordered Anderson to drop his weapon several times. Anderson refused and at one point fell to the ground, dropping his weapon.

12. When Anderson dropped his weapon, Deputy Frisbee moved to the front of his patrol vehicle, but Anderson quickly recovered the weapon and began yelling and waiving toward the east, holding the muzzle of the weapon between hip and shoulder high, advising Deputy Frisbee to tell additional units to "back off". Deputy Frisbee advised Anderson that he would have Deputy McCord back up, but that Anderson needed to drop the weapon. Anderson refused and indicated "This is my property and I can have a gun". In response, Deputy Frisbee ordered Anderson to keep the weapon pointed toward the ground and that Deputy Frisbee would speak with Anderson. Anderson complied, pointing the weapon toward the ground, and stated "Do not come on my property".

13. Deputy Frisbee advised Anderson that Sheriff's Deputies were not coming on his property and the reason they were there was because there was concern Anderson was going to cause harm to himself. Anderson stated he would like to speak with Denny Manley, a former Williams County Deputy Sheriff.

Deputy Frisbee advised Anderson he knew Mr. Manley. Anderson again stated he would like to talk to his friend, Denny, with whom he had spoken earlier in the day.

14. Deputy Frisbee advised Anderson that the Williams County Sheriff's Office would attempt to contact Mr. Manley and again ordered Anderson to drop the weapon. Anderson again refused and stated "If I point this at you, you'll have to shoot me, kill me". Deputy Frisbee responded "That's not what we're here for, we're not going there.". Anderson continued to speak with Deputy Frisbee, but became more agitated as additional vehicles began arriving in response to Deputy McCord's request for additional units.

15. Deputy Frisbee then introduced himself and asked Anderson his name. Anderson stated his name was "John" and further stated "I'm not going to hurt you, but I don't want anyone here". Deputy Frisbee again asked Anderson to drop his weapon and that they would talk things over. While Deputy Frisbee was speaking with Anderson, an off duty Ohio State Trooper, Gale Horn, arrived from the west. Trooper Horn assisted Deputy McCord in covering Deputy Frisbee, as Deputy Frisbee spoke with Anderson.

16. One of the additional vehicles that arrived at the scene was driven by Defendant, Thomas Szymczak. Defendant Szymczak was on duty in Edon, Ohio and heard the call of Deputy McCord, requesting additional units. Arriving at the scene, Szymczak was advised Anderson was sitting beneath a large tree at the northeast side of his residence and that he was covered by Deputies Frisbee, McCord, and off duty Highway Patrolman Horn. Szymczak

saw Deputy Frisbee standing in the roadway approximately 15-20 feet in front of his patrol vehicle without any cover or concealment, speaking with Anderson.

17. Defendant Szymczak exited his patrol vehicle, armed himself with an AR-15 Bushmaster, and loaded an extra magazine of NATO grade 5.56 ammunition. Defendant Szymczak charged the AR-15 Bushmaster, engaging the forward assist multiple times to ensure proper loading of his weapon. Szymczak then uncapped and activated the optics on the weapon.

18. Without orders from any superior officer or the agency in charge, the Williams County Sheriff and the Williams County Sheriff's Deputies, respectively, Defendant Szymczak turned down/off his communication headset and began moving behind Anderson through a field. Before he began moving through the field, Szymczak noticed Deputy Frisbee in the roadway approximately 15-20 feet in front of his vehicle without cover or concealment, speaking with Anderson. When Defendant Szymczak turned down/off his communication headset, he made it impossible for command personnel to determine his location or intentions, or to provide Defendant Szymczak with orders/instructions.

19. Defendant Szymczak positioned himself approximately 70 yards behind Anderson in a field of weeds. Defendant Szymczak could see the back of Anderson through his optics, as Anderson sat beneath the large tree at the northeast corner of the residence, speaking with Deputy Frisbee. Defendant Szymczak's position was unknown to command personnel and the other

police officers present, as Defendant Szymczak had turned down/off his headset radio, was not communicating with personnel in charge or any other police officer at the scene, and he had concealed himself in the weeds.

20. As Defendant Szymczak was positioning himself behind Anderson, Anderson was speaking with Deputy Frisbee. Anderson requested that Deputy Frisbee contact Mr. Anderson's son, Brent Anderson, providing Deputy Frisbee a phone number. Deputy Frisbee indicated he would attempt to contact Brent Anderson. Deputy Frisbee then observed Anderson manipulating his weapon and heard Mr. Anderson state "The safety is off". Deputy Frisbee took a few steps back to create distance and overheard off duty Highway Patrolman Horn advise that Anderson's daughter, Joanna Marihugh, had come to the scene.

21. Deputy Frisbee advised Anderson that his daughter had come to the scene and asked Anderson if he would like to speak with her. Anderson looked toward the west where the car carrying his daughter had just arrived. As he looked toward the west, the weapon carried by Anderson, which had been pointed at the ground, began to rise toward the west-northwest. Deputy Frisbee heard what he thought was a single gunshot. Anderson dropped the weapon in front of him with the barrel facing down and toward the west and fell backwards. Deputy Frisbee immediately moved toward Anderson with his weapon trained on Anderson. Other officers also began moving toward Anderson and began CPR.

22. The single shot had come from Defendant Szymczak, lying in the weeds 70 yards behind Anderson. Defendant Szymczak trained his AR-15 Bushmaster upon Anderson's back, using the weapon's optics. Defendant Szymczak placed his shot at Anderson's back heart high and just left of the spine. As officers were performing CPR upon Anderson, Defendant Szymczak left his cover in the weeds behind Mr. Anderson, began approaching Anderson, and stated that he was the one that had shot.

23. The officer in charge of the scene was the Williams County Sheriff, Steven Towns, and that the jurisdiction of the action was the Williams County Sheriff's Department. Sheriff Towns never gave an order to shoot. Williams County Deputy Frisbee never felt he was in imminent danger or that Anderson was an imminent threat of deadly force or harm. Deputy Frisbee could have shot Anderson at any time, had he needed to, as he had his weapon trained on Anderson throughout, as did Deputy McCord and the off duty Highway Patrolman Horn.

24. Command personnel within the Williams County Sheriff's Department never felt Anderson was an imminent threat of serious harm/deadly force, as Williams County Sheriff Deputies could have shot Anderson at any time had they needed to.

25. That immediately prior to Defendant Szymczak shooting Anderson in the back, Williams County Sheriff Deputy Frisbee was speaking with Anderson and Anderson had asked to speak with friends and relatives. The Williams County Sheriff's Department was in control of the situation and the Williams

County Sheriff's Department never made a request that anyone take any action, whatsoever, against Anderson.

26. The Williams County Sheriff's Department via Deputy Frisbee and Deputy McCord had the situation well in hand, were dealing with the situation professionally, and neither felt Anderson posed an imminent threat of harm to himself or others or that the use of deadly force was necessary, as neither felt they were in any imminent danger. Either and/or both Deputies Frisbee and McCord, and/or Trooper Horn, could have shot Anderson at any time had they felt they needed to, as all three had their assault weapons trained on Anderson.

27. Defendant Szymczak has stated the reason he shot Anderson was because the Williams County Sheriff's Deputies would not shoot Anderson.

28. The shooting of Anderson by Defendant Szymczak was witnessed by Anderson's daughter, Johanna Marihugh.

29. Had Defendant Szymczak maintained contact with command personnel at the scene, he would have been advised there was no order to shoot.

30. Had Defendant Szymczak waited until Anderson's daughter, Johanna Marihugh, had the opportunity to speak with Williams County Sheriff Deputies, and had Defendant Szymczak maintained contact with command personnel, Defendant Szymczak would have learned that the gun held by Anderson was not functional, would not load properly, and could not shoot.

31. Anderson was transported from the scene to a hospital in Montpelier, Ohio, where he was pronounced dead from a single gunshot wound to the back.

32. Deputies Frisbee and McCord arrived at approximately 10:31 a.m. and Defendant Szymczak shot Mr. Anderson in the back at approximately 10:51 a.m., 20 minutes having expired between the initial arrival of Sheriff's Deputies, until Defendant Szymczak's unauthorized and unnecessary shooting of Anderson.

33. At all times relevant to this action, Defendant Szymczak acted within the scope of his duties as an Edon Police Officer.

34. At no time did Defendant Szymczak have probable cause to shoot Anderson, as Anderson did not pose an imminent threat of harm to himself or others, as he sat under the tree and spoke with Deputy Frisbee.

35. That Defendant Szymczak acted recklessly, wantonly, knowingly, intentionally, and with deliberate indifference to the safety and rights of John Anderson. He shot Anderson in the back while lying prone in weeds 70 yards behind Anderson, as Deputy Frisbee was standing 15-20 feet in front of Mr. Anderson, engaging Mr. Anderson in conversation.

36. Defendant's Szymczak's use of deadly force was negligent, reckless, wanton, willful, knowing, intentional, and with deliberate indifference to the safety and rights of John Anderson.

37. Defendant, Village of Edon's, policies, patterns, practices, customs, and usages, and/or the lack of appropriate policies, patterns, practices, customs, and usages, regarding the use of deadly force against individuals who did not exhibit the threat of imminent harm to themselves or others, were the moving

forces behind the use of force by Defendant Szymczak and proximately caused John Anderson's suffering and death.

38. That Defendant, Village of Edon, failed to adequately train and supervise Defendant Szymczak regarding the use of deadly force, and that failure to train and supervise was a moving force behind Defendant Szymczak's use of force and the proximate cause of John Anderson's suffering and death.

39. That prior to the shooting of Anderson, Defendant, Village of Edon, continued to employ Defendant Szymczak despite the fact his actions, behaviors, and patterns of judgment clearly showed that he was unfit for police duty, did not follow appropriate protocol, did not follow well established rules, and did not modify his behavior when confronted with his inadequacies.

40. That Defendant, Village of Edon, continued to employ Defendant Szymczak despite a pattern of behavior which clearly showed he was unfit for police work. By way of example, Defendant Szymczak purchased an armored personnel carrier, absent any authorization to do so, Defendant Szymczak escalated the number and firepower of weapons he maintained for both on-duty and off-duty use, Defendant Szymczak was unable to follow simple directives from the Bryan Municipal Court, Defendant Szymczak displayed numerous instances of improper police procedures, and Defendant Szymczak displayed ignorance of or deliberate indifference to proper police procedures, including his conduct when confronted with the manufacture of drugs in the Village of Edon, Ohio.

41. That by continuing to employee Defendant Szymczak, an individual whose behavior demonstrated the desire to use deadly force when the same was not warranted, authorized, or necessary, an individual who had neither special training nor supervision to address this deficiency, and an individual who was not provided appropriate training and supervision, the policy makers and those responsible for hiring, training, and supervising Defendant Szymczak within the Village of Edon acted negligently, recklessly, willfully, wantonly, and with deliberate indifference to the serious safety needs of the citizens of the Village of Edon and to the residents of Williams County, including John Anderson.

42. That Defendant, Village of Edon, had a practice and custom of failing to adequately investigate and discipline Defendant Szymczak for the use of excessive use of force upon its citizens and for failing to follow proper protocol. These practices and customs were moving forces behind the excessive force used against John Anderson which proximately caused Anderson's suffering and death.

43. That Defendant, Village of Edon, made a practice and custom of allowing Defendant Szymczak to use excessive force, failing to supervise Defendant Szymczak to reduce excessive force, failing to ensure Defendant Szymczak followed established protocol, and failing to ensure that any training provided to Defendant Szymczak would result in de-escalation and the unnecessary use of excessive force to resolve encounters with citizenry. That practices and customs of the Village of Edon were moving forces behind the excessive

force used against John Anderson which proximately caused Mr. Anderson's suffering and death.

44. That as a direct of proximate result of the negligent, reckless, wanton, intentional, and indifference of Defendants, Village of Edon and Thomas Szymczak, John Anderson endured pain, suffering, and death.

45. That the negligent, wanton, reckless, intentional, and indifference of the Defendants is joint and several.

46. That as a direct and proximate result of John Anderson's wrongful death, Mr. Anderson's survivors, next of kin, and/or heirs, have suffered permanent damage, including, but not limited to, grief, severe emotional distress, a loss of services, companionship, care, and love. Mr. Anderson's survivors have also incurred funeral bills and other expenses, and they will continue to experience the above due to his death in the future.

## IV. FIRST CAUSE OF ACTION – EXCESSIVE FORCE

47. That Defendants, Village of Edon and Thomas Szymczak, have, under color of law, deprived John Anderson of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments to the United State Constitution, including the right to be free of and from the use of excessive force.

## V. SECOND CAUSE OF ACTION – ASSAULT AND BATTERY

48. That Defendant, Thomas Szymczak, negligently, recklessly, willfully, wantonly, intentionally, and maliciously applied unnecessary force against John Anderson.

## VI. THIRD CAUSE OF ACTION – WRONGFUL DEATH

49. That Defendants, Village of Edon and Thomas Szymczak, jointly and severally, caused the wrongful death of John Anderson, resulting in damages recoverable under R.C. §2125.02.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, by and through counsel, move the Court to award the following:

1. Compensatory damages in an amount to be shown at trial in excess of $75,000.00;
2. Punitive damages against Defendant, Thomas Szymczak, in an amount to be shown at trial;
3. Compensatory damages for the wrongful death of John Anderson in an amount to be shown at trial and in excess of $75,000.00;
4. Plaintiffs costs incurred in this action and for reasonable attorney fees, pursuant to 42 U.S.C. § 1988;
5. For prejudgment interest;
6. For any and all other relief the Court deems just, proper and equitable.

Respectfully submitted,

BRYCE, LTD.

_____
Robert W. Bryce (0006527)
715 S. Coy Road
Oregon, OH 43616
Telephone: 419-691-2435
Facsimile: 419-691-1209
Email: bryce@sbattylaw.com

GRETICK, HARVEY & THOMPSON, LTD.

_____
Anthony L. Gretick (0006442)
121 W. Butler Street
Bryan, OH 43506
Telephone: 419-636-7003
Facsimile: 419-693-7003
Email: tgretick@msn.com

GRETICK, HARVEY & THOMPSON, LTD.

_____
Ryan S. Thompson (0077481)
121 W. Butler Street
Bryan, OH 43506
Telephone: 419-636-7003
Facsimile: 419-693-7003
Email: ghtlaw74.com@gmail.com

## JURY DEMAND

Plaintiffs request a trial by jury on all claims triable of right by a jury herein.

_____
Robert W. Bryce

## JURY DEMAND

Plaintiffs request a trial by jury on all claims triable of right by a jury herein.